UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEVLUDI ETEMI,<br>Plaintiff, | : | NO.: 3:13-cv-00002 |
| v. | : | |
| NAPOLI MOTORS, INC., NISSAN NORTH AMERICA, INC., SCOTT HAVERL, PAUL BURCH, and LENNY NAPOLI,<br>Defendants. | : | JANUARY 2, 2013 |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Mevludi Etemi, by his attorneys, Rose Kallor, LLP, and for his Complaint alleges the following:

**NATURE OF THE ACTION**

1. The Plaintiff, Mevludi Etemi ("Plaintiff" or "Etemi"), brings this action to recover damages and obtain other equitable relief as caused by discrimination, retaliation, hostile work environment and sex harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq*. ("Title VII"), 42 U.S.C. §1981, the Connecticut Fair Employment Practices Act ("CFEPA"), as well as violations of the Connecticut Wage Collection Statute, breach of implied/express contract, unjust enrichment, defamation, fraud and negligent misrepresentation.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as many of the counts contained herein address violations of federal law. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

3. At all times relevant, Plaintiff was and still is a resident of Naugatuck, Connecticut.

4. At all times relevant, Defendant Nissan North America, Inc. ("Nissan"), a California Corporation whose corporate headquarters is One Nissan Way, Franklin, Tennessee 37067, employed individuals in Connecticut where the discriminatory conduct occurred by one of its agents and senior leaders, who is based in Connecticut.

5. At all times relevant, Defendant Napoli Motors, Inc. ("Napoli Motors") was a Connecticut Corporation whose principal place of business is 688 Bridgeport Avenue, Milford, Connecticut 06460.

6. At all times relevant, Defendant Scott Haverl ("Haverl") was the General Manager of Napoli Motors, as well as Plaintiff's supervisor. Haverl is domiciled in Connecticut.

7. At all times relevant, the owner of Napoli Motors was Lenny Napoli ("Mr. Napoli"). He is domiciled in Connecticut.

8. At all times relevant, Paul Burch ("Burch") was Nissan's agent, a senior leader, working as the Manager for Connecticut Dealer Operations for Nissan North America. Upon information and belief, Burch is domiciled in Connecticut.

9. Personal jurisdiction is proper before this Court as the Plaintiff resides in Connecticut, the Plaintiff worked for Napoli Motors in Connecticut, Defendant Nissan and its

employees do business in Connecticut, advertises in Connecticut, sells its products in Connecticut through the internet and at various stores and derives a substantial portion of its revenues from the business it conducts with Connecticut car dealerships and car retailers, and Napoli Motors and its employees. Nissan has representatives, like Paul Burch, whose base of operations is in Connecticut and work closely with the Connecticut dealerships, like Napoli Motors, and derive substantial revenue from such relationships with Connecticut dealerships through its representatives. Burch, Haverl and Mr. Napoli are domiciled in Connecticut. Moreover, the wrongful acts arise out of Plaintiff's employment relationship with Napoli Motors in Connecticut.

10. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(c).

## PARTIES

11. Napoli Motors is in the business of selling Nissan, Suzuki and used cars. It employs more than 15 persons.

12. Mr. Napoli is the Owner of Napoli Motors.

13. At all times relevant, Plaintiff's supervisor at Napoli Motors was Haverl, the General Manager.

14. Nissan is in the business of manufacturing and selling automobiles. They employ representatives within Connecticut, *inter alia*, to work closely with authorized Nissan dealerships, such as Napoli Motors, and provide incentives for the dealership and for sales personnel who sell their automobiles and to ensure compliance with the franchise agreement between Nissan and the dealerships, such as Napoli Motors.

15. Burch is Nissan's agent and Manager for Connecticut Dealer Operations, assigned to Napoli Motors, and has had regular communication with Napoli Motors management, including Scott Haverl and Plaintiff, while Plaintiff was employed by Napoli Motors. Burch's title was the Manager for Connecticut Dealer Operations.

16. Plaintiff is Albanian and a practicing Muslim (Islam). Plaintiff began working for Napoli Motors on March 30, 2002 as the General Sales Manager, and his supervisor was Haverl, the General Manager of Napoli Motors. Within a few years after Plaintiff began working for Napoli, Burch became Nissan's agent and Manager for Connecticut Dealer Operations assigned to Napoli.

**FACTS**

17. During the course of Plaintiff's employment with Napoli Motors, he received outstanding performance evaluations, as Plaintiff had always met or exceeded sales goals and maintained customer satisfaction, and never received any negative disciplinary action by Napoli Motors.

18. On Plaintiff's birthday, May 7, 2012, Haverl called Plaintiff into Mr. Napoli's office. Darlene Sebis, who works in the payroll department at Napoli Suzuki, was also present. Haverl informed Plaintiff that Napoli Motors was letting him go. At that time Haverl did not provide a reason for Plaintiff's termination. Plaintiff immediately asked why, to which Haverl replied, "no reason." Plaintiff asked, "is it the money?" and Haverl said, "no." Plaintiff then said, "after all my years of loyal service, could you let me resign?" to which there was no response. Haverl then handed Plaintiff a termination notice.

19. The termination notice indicates that Plaintiff was terminated for "changes in the department." Plaintiff was not provided any additional explanation. While the form contained a space to check if performance was the reason for termination, Napoli Motors did not check that box. Instead, the box checked was "other" and the individual from Napoli Motors who completed the form wrote in: "changes in the department."

20. The Plaintiff was terminated because of his ethnicity, ancestry, descent, religion, creed, national origin, alienage, race, and on the basis of characteristics and stereotypes closely associated with same. Moreover, Plaintiff was terminated and retaliated against for protected activity, including: (1) complaining about unlawful discrimination/harassment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, alienage, race, and on the basis of characteristics and stereotypes closely associated with same; and (2) complaining about sex harassment and a hostile work environment because of his sex, on behalf of himself and other Napoli Motors employees.

21. Moreover, because of the relationship between Nissan and Napoli Motors, Nissan had the ability to insert itself into Napoli Motors' employment decisions through Burch's conduct. Nissan and Burch did not want Napoli Motors to continue Plaintiff's employment with Napoli Motors because of Plaintiff's race, ethnicity, ancestry, descent, religion, creed, national origin, and on the basis of characteristics and stereotypes closely associated with the same, and Burch articulated his preferences to Napoli Motors and its agents. Napoli Motors' decision to terminate Plaintiff was also because of Burch's discriminatory animus.

22. For the majority of Plaintiff's employment with Napoli Motors, he did not reveal his ethnicity, ancestry, alienage, creed, national origin or religion. Plaintiff never took Muslim

holidays off to worship and never told his colleagues that he was Muslim. Plaintiff did not reveal such matters because at the time of Plaintiff's hire, Plaintiff overheard Haverl and other colleagues mock a former employee who was Muslim for taking breaks during the day to pray. Plaintiff overheard Haverl saying, "why do *these people* pray on the ground?" After several years of employment, a sales manager from Napoli Suzuki, who was Turkish and could tell by Plaintiff's accent that he was an Albanian Muslim, revealed Plaintiff's ethnicity, ancestry, descent, creed, national origin and religion in the presence of Haverl, Mr. Napoli, Debbi Soares (Director of Human Resources) and other colleagues by asking Plaintiff why he was working on "Eid," one of the holiest holidays in the Islamic faith.

23. From that moment on, until Plaintiff's termination, he was subjected to persistent harassment, name-calling, and ridicule on account of Plaintiff's race, ethnicity, ancestry, descent, religion, creed, national origin, and on the basis of characteristics and stereotypes closely associated with same.

24. On one occasion, the Plaintiff, Haverl, and Danny (last name unknown), a general sales manager at Napoli Suzuki, attended the National Automobile Dealers Association's annual conference in Fort Worth, Texas. During the trip, Danny said to Plaintiff, in the presence of Haverl, "you're a Muslim bastard, aren't you?" and "You guys believe in bombing yourselves so you can go to heaven and get virgins, right?" Although Haverl heard Danny's remarks, he smirked and did not say anything.

25. Since Haverl learned of Plaintiff's ethnicity, ancestry and descent, creed, race, religion, and national origin, he would continuously refer to Muslims as "terrorists" and

"towelheads" in Plaintiff's presence. He would also make comments like, "all you people do is make bombs."

26. Plaintiff asked Haverl on numerous occasions to stop making such derogatory comments, but he refused to do so, and responded to Plaintiff by laughing at Plaintiff.

27. After Plaintiff asked Haverl to stop, the harassment intensified. Every Saturday, Haverl would order in lunch for the staff. For the last several months of Plaintiff's employment, knowing that Plaintiff could not eat pork, which is forbidden by Plaintiff's cultural practices and religion, Haverl would purposely order ham sandwiches every week so Plaintiff could not eat anything. Haverl would continuously say, "make sure you order pork for Loue" and everyone would laugh.

28. Plaintiff was not the only Muslim employee targeted by Haverl. Syed Naveed, a Pakistani Muslim, who everyone called "Sammi", told Plaintiff that he [Mr. Naveed] had quit his job as a sales associate at Napoli Motors because he was sick of Haverl always referring to him as a "terrorist."

29. Burch, Nissan's agent to Napoli Motors since January 2011, also participated in the harassment and ridicule by aiding, abetting, compelling or coercing Napoli Motors' discriminatory practices on the grounds of Plaintiff's race, ethnicity, ancestry, descent, religion, alienage, creed, national origin, and on the basis of characteristics and stereotypes closely associated with same.

30. Further, referencing linguistic characteristics that are unique to Plaintiff's ethnic

group and ancestry, Burch made fun of the way Plaintiff spoke and mimicked Plaintiff's Albanian accent. Plaintiff once overheard Burch say to Haverl, "Loue is a stupid Albanian guy ... you're paying that motherf***er too much."

31. Burch also harbored an animus towards others based on his view of their ethnic characteristics, ancestry, creed, alienage, national origin, religion, and stereotypes and characteristics regarding the same. For instance, while Plaintiff was processing a financing application for customers of Middle-Eastern descent, Burch, who assumed the customers were Muslim because of their nationality, ethnicity, ancestry, descent, and other characteristics and stereotypes closely associated with the same said to Plaintiff, "don't give them a loan, they're terrorists!"

32. Because of the relationship between Nissan and Napoli Motors, Nissan had the ability to insert itself into Napoli Motors' employment decisions through Burch's conduct. Burch did not want Napoli Motors to continue Plaintiff's employment with Napoli Motors because of Plaintiff's race, ethnicity, ancestry, descent, religion, creed, national origin, and on the basis of characteristics and stereotypes closely associated with the same, and Burch articulated his preferences to Napoli Motors and its agents. Napoli Motors' decision to terminate Plaintiff was, in part, because of Burch's discriminatory animus.

33. Moreover, Lenny Napoli, the Owner of Napoli, also harbored an animus towards Plaintiff because of Plaintiff's race, ethnicity, ancestry, descent, religion, creed, national origin, and on the basis of characteristics and stereotypes closely associated with same. Just weeks prior to Plaintiff's termination, Plaintiff overheard Mr. Napoli say, "F*ck Loue, freaking Muslim."

34. Plaintiff was also the victim of sexual harassment and hostile work environment of which Napoli Motors was aware, yet neglected to do anything about.

35. Ron Valentino (Valentino), a sales associate, frequently showed Plaintiff videos and pictures of male-on-male pornography. Valentino also made unwelcome sexual advances. He once cornered Plaintiff and grabbed Plaintiff's buttocks, saying "Loue, I want you to come to my house and screw my wife while I watch."

36. Every time Valentino made a lewd sexual comment or inappropriate advance, Plaintiff told Valentino to stop, and further, many times Plaintiff threatened to sue Valentino. Haverl, the supervisor, witnessed this harassment and heard Plaintiff confront Valentino, but did nothing about it.

37. Valentino was actually Plaintiff's subordinate, but he is well known in the company as "untouchable" and immune from discipline because Valentino and Haverl are close friends who often socialize together outside of work. In fact, Plaintiff tried to terminate Valentino for insubordinate conduct and poor customer service on two different occasions, and each time Haverl overruled Plaintiff's decision and brought Valentino back to work because of their friendship.

38. Valentino's behavior and conduct towards others, including Plaintiff, had been inappropriate on a number of occasions, but Haverl and Human Resources agents continuously shielded him from discipline and termination.

39. Plaintiff complained numerous times about Valentino's sexual harassment of him to Debbie Soares, Napoli Motors' Director of Human Resources. Like Haverl, she laughed and shrugged it off saying, "you know Ronnie." Complaints of Valentino's illegal and

discriminatory behavior remained unaddressed because Human Resources administrators reported to Haverl.

40. Haverl also sexually harassed Plaintiff. At a Christmas party, Haverl held Plaintiff's arms back—against Plaintiff's will—then unbuttoned Plaintiff's shirt, and encouraged female staff members to put whipped cream on Plaintiff's chest and lick it off, which they did. On another occasion, Haverl also encouraged female staff and Valentino to touch Plaintiff's genital areas so he [Haverl] could "watch [Plaintiff] squirm," which they did.

41. Haverl also sent Plaintiff sexually explicit text messages on a regular basis, including photos of naked women and Valentino pretending to perform oral sex on another sales associate.

42. In addition to opposing the sexual harassment targeted at Plaintiff, Plaintiff opposed the sexual harassment he witnessed Haverl and Valentino acting out towards other employees at Napoli Motors.

43. For example, not long prior to Plaintiff's termination, Plaintiff observed Valentino sexually harass another male employee who worked at the reception desk. Plaintiff immediately complained to Haverl and Ms. Soares, who again shrugged it off.

44. Plaintiff also observed Haverl forcefully grab a female employee's neck and push her face towards his private area, gesturing that she should perform oral sex on him. Plaintiff was appalled by this and told Haverl to stop.

45. Defendants Napoli Motors and Haverl unlawfully withheld Plaintiff's final paycheck until Plaintiff returned a car and title to it, which had been given by Napoli Motors to Plaintiff. Plaintiff agreed to return the car under protest. There had also been a car on Napoli

Motors' lot which the Plaintiff had previously returned, but for which Plaintiff had not signed over title. Upon information and belief, Napoli Motors unlawfully forged Plaintiff's signature on the title to that vehicle.

46. After turning over title to Napoli Motors, Plaintiff approached Burch and said, "You never liked me. Why …is it because I'm Muslim?" to which Burch smiled and said, "I'm going to sleep well tonight, Loue."

47. Burch then admitted to Plaintiff that he (Burch) had refused to pay Plaintiff a $900.00 commission that Plaintiff had earned, and was owed from Nissan as a sales incentive, by giving it to a finance manager from Napoli Motors instead.

48. Upon information and belief, Defendants have been unjustly enriched by forcing Plaintiff to deliver to Napoli Motors a 2012 Altima Hybrid vehicle without compensating Plaintiff for that vehicle.

49. Throughout the Plaintiff's employment, his compensation was paid in accordance with a compensation structure which guaranteed Plaintiff earnings based in part on Napoli Motors' performance. This compensation structure contractually obligated Napoli Motors to pay in accordance with that structure.

50. Plaintiff was not paid in accordance with the compensation structure as the Plaintiff received more earnings in 2010 than in 2011, but Napoli Motors' earnings increased from 2010 to 2011. He was not paid his proper compensation, including commissions, bonuses and other compensation in breach of express and implied contracts and in violation of Connecticut's wage payment laws, and as a result of the discrimination and retaliation that Plaintiff suffered.

51. Moreover, upon information and belief, Plaintiff was not paid in accordance with the compensation structure in effect throughout his employment with Napoli Motors. Upon information and belief, Napoli Motors intentionally, recklessly and negligently reported false information regarding Napoli Motors' receivables in order to reduce the amount of compensation owed to the Plaintiff.

52. Defendant breached the terms of express and/or implied contracts with Plaintiff by not paying Plaintiff all compensation, including commissions, bonuses, and other payments due to Plaintiff pursuant to pay plans and sales agreements Napoli Motors published to its employees.

53. Haverl admitted to Plantiff that Mr. Napoli and Napoli Motors had a fraudulent method of creating and reporting car sales, car lease and car finance transactions for the purposes of defrauding employees out of payments, commissions, bonuses and other compensation owed to employees. Haverl also admitted to Plaintiff that Napoli Motors' senior leadership presented inaccurate records of car sales, car lease and car finance transactions to employees so that Napoli Motors could pay employees less money than actually owed to employees relative to the aforementioned transactions.

54. Defendants' conduct also served to bestow unjust enrichment on Napoli Motors' owner, management and employees, who received the benefits of financial and business gains that had in fact resulted from Plaintiff's own work and performance.

55. Upon information and belief, within a few weeks of Plaintiff's termination, in early June of 2012, Haverl responded to questions concerning Plaintiff's departure from Napoli Motors by telling people that Plaintiff had been fired because Plaintiff had stolen from Napoli

Motors. Those statements were false and constitute defamation per se. Haverl's defamatory statements were made to, and in the presence of, current and former employees of Napoli Motors, including but not limited to Matthew Porcu.

56. Plaintiff has exhausted his administrative remedies by filing an administrative complaint with the Commission on Human Rights and Opportunities which was dually filed with the Equal Employment Opportunity Commission. Plaintiff has requested a release of jurisdiction from those agencies.

**COUNT ONE – DISCRIMINATION IN VIOLATION OF 42 USC § 1981 AGAINST PAUL BURCH, SCOTT HAVERL, MR. NAPOLI, NISSAN AND NAPOLI MOTORS**

57. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. By the acts of Napoli Motors, Scott Haverl and Mr. Napoli, Plaintiff was deprived of his opportunity under the law to enjoy all benefits, privileges, terms and conditions of his employment/contractual relationship with Napoli Motors on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, alienage, race, and on the basis of characteristics and stereotypes closely associated with the same, by virtue of his termination, hostile work environment, retaliation and failure to pay Plaintiff compensation due him under the terms of the compensation structure.

59. Plaintiff was also deprived of his opportunity to earn incentives that Nissan owed him by Nissan and Burch, due to Nissan's obligations to pay Napoli Motors' sales manager certain incentives in accordance with contracts between Plaintiff and Nissan, Plaintiff and Napoli Motors, and/or Nissan and Napoli Motors under which Plaintiff was a third-party beneficiary.

60. As a result of the Defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT TWO – HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 USC § 1981 AGAINST SCOTT HAVERL, MR. NAPOLI AND NAPOLI MOTORS**

61. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

62. Haverl, Napoli Motors and Mr. Napoli subjected Plaintiff to a hostile work environment in a manner prohibited by 42 U.S.C. Section 1981. Specifically, Plaintiff was subjected to a hostile work environment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same.

63. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT THREE – RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 AGAINST HAVERL AND NAPOLI MOTORS**

64. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

65. Haverl and Napoli Motors retaliated against Plaintiff because he engaged in protected activity under 42 U.S.C. Section 1981 (namely by complaining about unlawful discrimination/harassment on the basis of his ethnicity, ancestry, descent, religion, creed,

national origin, alienage and race) by terminating his employment and not paying compensation due Plaintiff.

66. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT FOUR – DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST NAPOLI MOTORS**

67. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

68. Plaintiff was subjected to unlawful discrimination on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same.

69. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT FIVE –HOSTILE WORK ENVIRONMENT/SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST NAPOLI MOTORS**

70. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

71. Plaintiff was subjected to a hostile work environment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same.

72. Plaintiff was subjected to a hostile work environment/sexually harassed on the basis of his sex.

73. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT SIX –RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST NAPOLI MOTORS**

74. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

75. Plaintiff was subjected to retaliation as a result of engaging in protected activity prohibited by Title VII (namely by (1) complaining about unlawful discrimination/harassment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, alienage, race, and on the basis of characteristics and stereotypes closely associated with same; and (2) complaining about sex harassment and a hostile work environment because of his sex, on behalf of himself and other Napoli Motors employees) by terminating his employment and not paying compensation due Plaintiff.

76. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT SEVEN – DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT AGAINST NAPOLI MOTORS**

77. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

78. Plaintiff was subjected to unlawful discrimination on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same.

79. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT EIGHT –SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT AGAINST NAPOLI MOTORS**

80. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

81. Plaintiff was subjected to a hostile work environment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same.

82. Plaintiff was subjected to sexual harassment/hostile work environment on the basis of his sex.

83. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT NINE – RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT AGAINST NAPOLI MOTORS AND SCOTT HAVERL**

84. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

85. Plaintiff was subjected to retaliation for engaging in protected activity prohibited by the Connecticut Fair Employment Practices Act, (namely by (1) complaining about unlawful discrimination/harassment on the basis of his ethnicity, ancestry, descent, religion, creed, national origin, alienage, race, and on the basis of characteristics and stereotypes closely associated with same; and (2) complaining about sex harassment and a hostile work environment because of his sex, on behalf of himself and other Napoli Motors employees) by terminating his employment and not paying compensation due Plaintiff.

86. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT TEN – AIDING AND ABETTING DISCRIMINATORY CONDUCT IN VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT AGAINST BURCH AND NISSAN**

87. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

88. Burch and Nissan aided, abetted, incited, compelled and/or coerced the acts referenced herein that are forbidden under Section the Connecticut Fair Employment Practices Act, including acts of discrimination on the basis of ethnicity, ancestry, descent, religion, creed, national origin, race, and on the basis of characteristics and stereotypes closely associated with same, and acts constituting sexual harassment.

89. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT ELEVEN – BREACH OF EXPRESS CONTRACT AGAINST NAPOLI MOTORS**

90. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

91. Upon information and belief, Defendants' breached the terms of an express contract with Plaintiff by not paying Plaintiff all compensation, including commissions, bonuses, and other payments due to Plaintiff and still owed to Plaintiff as a result of the car sales goals achieved and exceeded by Plaintiff, and pursuant to pay plans, sales agreements and other related documents that Defendants authored and distributed to their employees.

92. Moreover, Defendant breached the terms of an express contract with Plaintiff to ensure certain incentives were paid to him by Nissan in accordance with incentive programs offered to sales employees.

93. Napoli Motors knowingly permitted Nissan to tender a check for $900 that belonged to the Plaintiff in the name of co-worker.

94. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT TWELVE – BREACH OF IMPLIED CONTRACT AGAINST NAPOLI MOTORS**

95. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

96. Upon information and belief, Defendants' breached the terms of an implied contract with Plaintiff by not paying Plaintiff all compensation, including commissions, bonuses,

and other payments due to Plaintiff and still owed to Plaintiff as a result of the car sales goals achieved and exceeded by Plaintiff, and pursuant to pay plans, sales agreements and other related documents that Defendants authored and distributed to their employees.

97. Moreover, Defendant breached the terms of an implied contract with Plaintiff to ensure certain incentives were paid to him by Nissan in accordance with incentive programs offered to sales employees.

98. Napoli Motors knowingly permitted Nissan to tender a check for $900 in the name of a co-worker, that belonged to the Plaintiff.

99. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT THIRTEEN – BREACH OF EXPRESS CONTRACT AGAINST NISSAN**

100. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

101. Napoli Motors and Nissan had an express contract to pay Napoli's sales team certain incentives.

102. As the Sales Manager for Napoli Motors, Plaintiff had an implied contract with Nissan by which Nissan was obligated to pay Plaintiff $900 for the sale of a certain vehicle in accordance with a transaction that occurred before Plaintiff's termination.

103. Plaintiff was a third party beneficiary to any express contract between Napoli Motors and Nissan.

104. At the time of Plaintiff's termination, Nissan owed Plaintiff $900 in accordance with said incentives.

105. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT FOURTEEN – BREACH OF IMPLED CONTRACT AGAINST NISSAN**

106. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

107. Napoli Motors and Nissan had an implied contract to pay Napoli's sales team certain incentives.

108. As the Sales Manager for Napoli Motors, Plaintiff had an implied contract with Nissan by which Nissan was obligated to pay Plaintiff $900 for the sale of a certain vehicle in accordance with a transaction that occurred before Plaintiff's termination.

109. Plaintiff was a third party beneficiary to any implied contract between Napoli Motors and Nissan.

110. At the time of Plaintiff's termination, Nissan owed Plaintiff $900 in accordance with said incentives.

111. As a result of the defendant's conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT FIFTEEN - UNJUST ENRICHMENT AGAINST NAPOLI MOTORS**

112 Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

113. Plaintiff asserts that although he performed his work and sales job duties, including meeting and exceeding sales goals and other measures, in manner that qualified him certain compensation, bonuses, commissions and payments, and that although his work benefitted Defendants financially and expanded Defendants' beneficial business relationships, upon information and belief, the Defendants denied him compensation, bonuses, commission and other payments while the Defendants received unjust enrichment for Plaintiff's work for themselves and their employees.

114. Plaintiff further asserts that Defendants were unjustly enriched when they forced Plaintiff to deliver the 2012 Altima Hybrid vehicle that had been given to him during his employment following their termination of Plaintiff while not compensating Plaintiff for this vehicle.

115. As a result of the defendants' conduct, Plaintiff has and will continue to suffer economic damages and emotional distress. Plaintiff will also incur substantial attorney's fees and legal costs.

**COUNT SIXTEEN - FAILURE TO PAY WAGES IN VIOLATION OF CONNECTICUT'S WAGE COLLECTION STATUTE (CONN. GEN. STAT. §31-71c, §31-71e) (CONNECTICUT'S WAGE COLLECTION STATUTE) AGAINST NAPOLI MOTORS, SCOTT HAVERL AND MR. NAPOLI**

116. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

117. Upon information and belief, Napoli Motors willfully refused to pay Plaintiff wages pursuant to Conn. Gen. Stat. §31-71c and §31-71e (Connecticut's Wage Collection Statute).

118. As a result of the willful failure of Napoli Motors' failure to pay Plaintiff his wages due, Plaintiff suffered economic and emotional distress damages, and Plaintiff will incur substantial attorney's fees and legal costs.

**COUNT SEVENTEEN – FRAUD AGAINST NAPOLI MOTORS AND SCOTT HAVERL AND MR. NAPOLI**

119. Plaintiff hereby incorporates paragraphs 1 through 56 of this Complaint as if fully set forth herein.

120. Upon information and belief, throughout his employment, Napoli Motors, Mr. Napoli and Scott Haverl intentionally made false representations in financial documents given to Plaintiff so as to justify less compensation paid to Plaintiff and other employees.

121. Plaintiff relied on these documents to his detriment.

122. As a result, Plaintiff suffered economic and emotional distress damages and Plaintiff will incur substantial attorney's fees and legal costs.

**COUNT EIGHTEEN – NEGLIGENT MISREPRESENTATION AGAINST NAPOLI MOTORS, SCOTT HAVERL, AND MR. NAPOLI**

123. Plaintiff hereby incorporates paragraphs 1 through 56 of this Complaint as if fully set forth herein.

124. Upon information and belief, throughout his employment, Napoli Motors, Mr. Napoli and Scott Haverl made false misrepresentations of fact when they falsely represented

certain data in financial documents given to Plaintiff so as to justify less compensation paid to Plaintiff.

125. Plaintiff relied on these documents to his detriment.

126. As a result, Plaintiff suffered economic and emotional distress damages and Plaintiff will incur substantial attorney's fees and legal costs.

**COUNT NINETEEN – DEFAMATION AGAINST HAVERL AND NAPOLI MOTORS**

127. Plaintiff hereby incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

128. Following Defendants' unlawful termination of Plaintiff, Defendant Haverl, who is a senior leader of Napoli Motors, made false and defamatory statements to, and in the presence of, current and former employees of Napoli Motors, including but not limited to Matthew Porcu, identifying Plaintiff as being an employee who was terminated from Napoli Motors because he had stolen from the Company.

129. These defamatory statements impugned the integrity of the Plaintiff with regard to his profession in the car sales industry or trade, and attacked Plaintiff's reputation for honesty and trustworthiness, impeding Plaintiff's ability to secure other employment, and negatively impacting Plaintiff's reputation and good name, which is a critical component of successful work in the car sales industry, trade and profession.

130. As a result of the defamation, Plaintiff has and will continue to suffer economic and emotional distress damages as well as damages to his reputation. Plaintiff will also incur substantial attorney's fees and legal costs

WHEREFORE, the Plaintiff, MEVLUDI ETEMI, claims:

(a) Reinstatement;

(b) Front pay;

(c) Backpay;

(d) Treble damages;

(e) Redacting defamatory statements;

(f) Special damages;

(g) General damages;

(h) Damages to reputation;

(i) Compensatory Damages;

(j) Punitive Damages;

(k) Attorney's Fees and Costs;

(l) Liquidated damages;

(m) Interest; and

(n) Such relief as the Court deems fair, just and equitable.

**JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all questions of facts raised by his complaint.

THE PLAINTIFF,
MEVLUDI ETEMI

By__/s/ Robin B. Kallor________
Robin B. Kallor (ct26536)
Rose Kallor, LLP
750 Main Street, Suite 606
Hartford, CT 06103
(860) 748-4660
(860) 241-1547 (fax)
E-Mail: rkallor@rosekallor.com